**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RACHELLE CASEY and GERALD CASEY, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-3830 |
| | § | |
| FEDERAL HOME LOAN MORTGAGE | § | |
| ASSOCIATION and BANK OF AMERICA, N.A., | § | |
| F/K/A BAC HOME LOANS SERVICING, LP, | § | |
| | § | |
| *Defendants.* | § | |

**ORDER**

Pending before the court is a motion to dismiss filed by defendants Federal Home Mortgage Corporation, improperly named Federal Home Loan Mortgage Association, and Bank of America, N.A. ("BOA"), successor by merger to BAC Home Loans Servicing, L.P. ("BAC") (collectively, "Defendants"). Dkt. 4. Plaintiffs Rachelle and Gerald Casey have requested that the court deny the motion or, alternatively, grant them leave to amend. Dkt. 8. Having considered the motion, responsive briefing, and applicable law, the court is of the opinion that Defendants' motion to dismiss (Dkt. 4) should be GRANTED IN PART AND DENIED IN PART and the Caseys' motion to amend (Dkt. 8) should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

The Caseys purchased a home in Humble, Texas on or about April 28, 2000. Dkt. 1-1. They obtained financing for their purchase from BOA. *Id.* The Caseys assert that they contacted BOA and BAC, the servicer for the loan, numerous times prior to April 2011, as they were seeking a modification of their loan under the Making Homes Affordable program and other programs offered by BOA. *Id.* The Caseys state that BAC specifically instructed them not to make full payments as

it would disqualify them for the modification program, so they made reduced payments during the modification application process. *Id.* Additionally, the Caseys assert that they were verbally assured that they had prequalified for modification and that foreclosure would not occur while they were in the process of applying for modification. *Id.* Defendants allegedly gave the Caseys a reduced amount to pay and accepted these reduced payment amounts until March 2011. *Id.* On or about March 15, 2011, BOA allegedly advised the Caseys that the modification was still pending and that there would be no foreclosure. *Id.* However, at some point Defendants initiated an acceleration of the mortgage note and posted the Casey's home for foreclosure. The Caseys allege that BOA proceeded with foreclosure on April 5, 2011. *Id.* Defendants subsequently instituted proceedings to evict the Caseys from their home. *Id.*

The Caseys filed a lawsuit against Defendants in the Eleventh Judicial District Court of Harris County, Texas on September 22, 2011, seeking a temporary restraining order and temporary injunction. Dkt. 1-1. Their petition asserts claims for fraud, wrongful foreclosure due to fraud, wrongful foreclosure due to failure to properly notice, slander of title, promissory estoppel, unreasonable collection, breach of duty of fair dealing, and failure to provide an accounting of funds prior to foreclosure. *Id.* The Caseys argue that they did not pay more money to BOA or file for bankruptcy or injunctive relief prior to April 5, 2011, because they relied on BOA's representations that a foreclosure sale would not occur if they made the required reduced payments and were still in the modification review stage. *Id.* The Caseys allege that it is their belief that Defendants intentionally misrepresented their intentions to prevent the Caseys from seeking judicial relief prior to foreclosure and they relied on these misrepresentations to their detriment. *Id.* The Caseys note that their credit has been damaged as a result of the foreclosure and that they therefore cannot obtain a loan to buy back their home and are unable to obtain financing for another home. *Id.* Additionally,

2

the Caseys assert that they believe that Defendants failed to follow Texas requirements for acceleration and notice of foreclosure. *Id.* The Caseys also assert that Defendants failed to provide an accounting of their pre-foreclosure account or of the funds received or credited as part of the foreclosure sale, and they seek a court order requiring Defendants to provide these documents. *Id.*

The state court entered an order granting a temporary restraining order that prohibited Defendants from interfering or excluding the Caseys from their home pending final judgment in this case on September 22, 2011. Dkt. 1-1. On October 28, 2011, Defendants removed the case to this court, asserting that this court has diversity jurisdiction. Dkt. 1. On November 4, 2011, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), to which the Caseys have filed a response and alternative motion to amend, and Defendants have filed a reply. Dkts. 4, 8, 9.

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In considering a 12(b)(6) motion, the court must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Additionally, the court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

3

elements of a cause of action will not do." *Twombly*, 550 U.S. at 554 (internal citations omitted). The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.*

### III. ANALYSIS

Defendants move to dismiss all of the Caseys' claims, asserting that the Caseys have failed to assert a claim for which relief can be granted because (1) the fraud claim is barred by the economic loss doctrine and fails because they have not pleaded reasonable reliance; (2) the Caseys do not adequately assert a claim for wrongful foreclosure due to fraud because the alleged misrepresentation has no relationship to the three elements of wrongful foreclosure; (3) the Caseys' generalized allegations about Defendants' acceleration of the note and notice of foreclosure do not meet the plausibility pleading standard; (4) the slander of title claim fails because the Caseys do not provide a plausible basis to conclude that BAC lacked authority to foreclose; (5) the promissory estoppel claim is barred by the existence of a contract and by the statute of frauds; (6) the Caseys have not stated a claim for unreasonable debt collection; (7) Texas does not recognize an implied duty of good faith and fair dealing in contract; and (8) the Caseys have not pled any theory to support their request for an accounting. Dkt. 4. The Caseys argue that the statute of frauds in not applicable and that they have clearly pled the reliance element under their promissory estoppel theory. Dkt. 8. They request that the court deny Defendants' motion to dismiss; alternatively, they move for leave to file an amended petition. Dkt. 8.

### A.   Fraud

In Texas, to allege common law fraud, plaintiffs must allege "(1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a

4

positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).  The Caseys contend that the representations Defendants made in connection with the potential loan modification and with the foreclosure were material misrepresentations upon which they relied to their detriment.  Dkt. 1-1. Defendants argue that the Caseys' fraud claim fails based on the economic loss rule and because they failed to plead reasonable reliance.  Dkt. 4 at 4.

### 1.      Reliance

The Caseys assert that Defendants told them that they had prequalified for a modification of their home loan and that there would be no foreclosure during the modification process.  Dkt. 1-1. Defendants argue that these allegations are insufficient to meet the pleading standards for a fraud claim because the Caseys have not pled that they reasonably relied on the alleged misrepresentation or misrepresentations.  Dkt. 4.  Defendants assert that it was unreasonable for the Caseys to rely on any representation that there would be no foreclosure during the modification process because the deed of trust specifically provides for acceleration and non-judicial foreclosure if the homebuyer is in default.  Dkt. 4.  The Caseys argue that their reliance on the alleged promise to postpone foreclosure during the loan modification process was not unreasonable since the HAMP guidelines prohibit foreclosure during modification review.  Dkt. 8.

Viewing the facts in the light most favorable to the Caseys, as the court must, the court finds that the Caseys' claim that they relied on BAC's representation that it would not foreclose on the Caseys' home during the modification process is reasonable given the fact that BAC is a servicer for a sophisticated lender and should have been aware of all federal guidelines and the Caseys were merely ordinary borrowers who were attempting to modify their home loan through a program

promulgated by the federal government to help homeowners who are struggling to avoid foreclosure while the economy stabilizes. *See generally Wigod v. Wells Fargo Bank, N.A.*, __ F.3d ___, 2012 WL 727646, at *2-3 (7th Cir. Mar. 7, 2012) (describing the Home Affordable Mortgage Program). Accordingly, Defendants motion to dismiss, to the extent it relies on the Caseys' alleged failure to plead reasonable reliance, is DENIED.

### 2.    Economic Loss Rule

Defendants also assert that the Caseys' fraud claim should be dismissed because the only damages alleged are contractual, and the economic loss rules bars tort claims when the only loss is to the subject matter of the contract.  Dkt. 4 at 4-5.  Under Texas law, when "the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  Tort damages, thus, are generally not recoverable if the defendants' conduct "would give rise to liability only because it breaches the parties' agreement." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).  Tort damages are, however, recoverable if the defendants' conduct "would give rise to liability independent of the fact that a contract exists between the parties." *Id.*  Additionally, "the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself;" thus, "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46-47 (Tex. 1998).

Here, the court must determine whether the Caseys' fraud claims would give rise to liability independent of the fact that a contract exists between the parties.  None of the alleged representations is independent of the note and deed of trust.  The potential modification was a modification of the

note and deed of trust, and the alleged promise not to foreclose was an alleged promise not to act on

a right provided for if the Caseys failed to perform their obligations under the note and deed of trust.

Thus, the alleged misrepresentations that form the basis of the Caseys' fraud claim flow solely from

the note and deed of trust and must be dismissed under the Economic Loss Rule. *See Myers v. Bank*

*of Am., N.A.*, No. 4:11-cv-457, 2012 WL 1107687, at *3 (E.D. Tex. Mar. 31, 2012) (dismissing the

plaintiffs' tort claims because they flowed "solely from the Note and Deed of Trust . . . [and] they

would not exist but for the contractual relationship between the parties"). Accordingly, Defendants'

motion to dismiss the Caseys' fraud claim is GRANTED.

**B.    Wrongful Foreclosure**

Defendants also move for dismissal of the Caseys' claims of wrongful foreclosure due to

fraud and due to failure to properly notice. Under Texas law, the elements of a wrongful foreclosure

are as follows: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling

price; and (3) a causal connection between the defect and the grossly inadequate selling price."

*Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christ 2008, no pet.).

The Caseys allege first that Defendants' representations were false and material and made with the

intent that the Caseys would rely on the misrepresentations and that Defendants would be unjustly

enriched. Dkt. 1-1 ¶ 21.F, Count 2. Then, they allege that they "believe[] that Defendants failed to

follow Texas requirements for acceleration of [the] note and for notice of foreclosure sale"and that

this failure constitutes slander of title, which they list under "Count 3 - Wrongful Foreclosure Due

to Failure to Properly Notice." *Id.*, Count 3. Defendants argue that the wrongful foreclosure due to

fraud claim should be dismissed because the alleged misrepresentation bears no relation to the three

elements of wrongful foreclosure and that the wrongful foreclosure due to failure to properly notice

claim should be dismissed because the Caseys' generalized belief that Defendants failed to follow

Texas requirements is not plausible in that "it states the mere possibility of a defect." Dkt. 4 at 6. Moreover, Defendants point out that the Caseys do not state a claim because they fail to allege an inadequate selling price.

The court agrees with Defendants.  First, the alleged misrepresentation is completely unrelated to the elements of a wrongful foreclosure claim in Texas, so the wrongful foreclosure due to fraud claim must be dismissed.  Second, a generalized belief that Defendants may not have followed the notice requirements is insufficient to raise a reasonable expectation that discovery will reveal further supporting evidence, and, even if it were, there are no allegations of an inadequate selling price, so the Caseys do not meet the elements of the wrongful foreclosure cause of action. Accordingly, Defendants' motion to dismiss the wrongful foreclosure claims is GRANTED.

## C.      Slander of Title

The Caseys state that they "believe" that BAC did not receive a conveyance of title or rights from the original mortgagee or a legitimate successor in interest and that, therefore, BAC's actions constitute a slander of their title to their home.  Dkt. 1-1.  Defendants assert that the Caseys fail to state a claim for slander of title because they, as the mortgage servicer, were authorized under section 51.0025 of the Texas Property Code to administer the foreclosure.  Dkt. 4.  Under Texas law, a party alleging slander of title must show "(1) the utterings and publishing of disparaging words; (2) that they were false; (3) that they were malicious; (4) that special damages were sustained thereby; (5) that the plaintiff possessed an estate or interest in the property disparaged; and (6) the loss of a specific sale." *Williams v. Jennings*, 755 S.W.2d 874, 879 (Tex. App.—Houston [14th Dist.] 1988, writ ref'd).  Section 51.0025 of the Texas Property Code authorizes a mortgage servicer to administer a foreclosure if:

      (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and (2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee and the name of the mortgagee and:

          (A) the address of the mortgagee; or

          (B) the address of the mortgage servicer, if there is an agreement granting the mortgage servicer the authority to service the mortgage.

Tex. Prop. Code Ann. § 51.0025 (Vernon 2007).

      The Caseys allege that they believe that BAC "did not receive a conveyance and/or *rights* from the original mortgagee." Dkt. 1-1 (emphasis added). The Caseys state in their petition that BAC's representatives represented that BAC had the right to service the mortgage and that they made payments in the amounts given to them by BAC. Dkt. 1-1 ¶ 8. It thus does not appear that the Caseys are questioning BAC's authority as the mortgage servicer. As the servicer, BAC had statutory authority to administer the foreclosure. Moreover, there are no allegations that BAC made malicious comments or published disparaging words. Defendants' motion to dismiss the slander of title claim is GRANTED.

**D.    Promissory Estoppel**

      The Caseys next assert a promissory estoppel claim, alleging that Defendants "entered into an oral contract for application and participation in the Making Home Affordable program, as well as other loan modification programs, then breached the agreement, . . . [they] agreed to accept payments for varying amounts from Plaintiffs, . . . and Plaintiffs reasonably relied on Defendant's [sic.] promises to their detriment." Dkt. 1-1. The Caseys state that if Defendants had not made promises regarding the modification program and partial payments, the Caseys would have arranged to make full rather than partial payments so as to avoid foreclosure. *Id.* Defendants argue that the promissory estoppel claim is barred by the statute of frauds because the Caseys are attempting to

enforce a promise to modify the terms of an existing contract in excess of $50,000 that is thus covered by the statute of frauds.  Dkt. 4.

The statute of frauds is an affirmative defense.  *See* Fed. R. Civ. P. 8(c); *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).  "Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the fact of the complaint."  *EPCO Carbon Dioxide Prods.*, 467 F.3d at 470. Here, the Caseys clearly allege that the promises made by Defendants were oral, so if these promises had to be in writing in order to comply with the statute of frauds under Texas law, then the court may dismiss even though the statute of frauds is an affirmative defense.

Under section 26.02 of the Texas Business and Commerce Code, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by that party's authorized representative."  Tex. Bus. & Commerce Code Ann. § 26.02(b) (Vernon 2009).  A "loan agreement means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans *or delays repayment of* or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit *or make a financial accommodation*."  *Id.* § 26.02(a)(2) (emphasis added).

"Promissory estoppel [has] been recognized as [an] equity-based exception[] to the traditional statute of frauds.  Promissory estoppel allows enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promissee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury."  *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553 (Tex.

10

App.—Dallas 2009, pet. dism'd) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982), and *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972)).  This exception to the statute of frauds applies only if the alleged oral promise is a promise to sign an existing document that satisfies the statute of frauds.  *Id.*; *see Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) ("Under Texas law, promissory estoppel requires that 'the agreement that is the subject of the promise must comply with the statute of frauds.  That is, the agreement must be in writing at the time of the oral promise to sign it.'" (quoting *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. App.—Dallas 2002, pet. denied)).

The Caseys argue that section 26.02(a)(2) of the Texas Business and Commerce Code does not apply to the promise at issue because an "agreement to postpone a foreclosure is clearly not part of the 'loan agreement' definition contained in § 26.02."  Dkt. 8 at 3.  Additionally, they argue that "an agreement to delay a foreclosure for a short period of time could not under any stretch of the imagination be valued at $50,000.00 or more in the present case."  *Id.*  The Caseys assert that Defendants are confusing a loan modification with an agreement to postpone a foreclosure.  *Id.*

Defendants, however, are not confusing a loan modification with an agreement to postpone a foreclosure.  The agreement upon which the Caseys allegedly relied to their detriment is an agreement to postpone the foreclosure while the modification applications were pending.  The Caseys specifically allege that in "reliance on Defendant's representations, Plaintiff[s] understood that the April foreclosure would not occur since they had made the required payments and were still in the modification review stage of the modification process."  Dkt. 1-1 ¶ 12.  The power to accelerate the loan and foreclose if the Caseys did not make the required payments arose from the note and deed of trust for their home—an agreement that the Caseys do not suggest is valued at less than $50,000.00.  An oral agreement to postpone foreclosure on their home is an oral agreement to

modify that agreement—delay repayment of the loan—and such an agreement is not valid, under Texas law, if it is not in writing. *Cf. Burnette v. Wells Fargo Bank,* N.A., No. 4:09-CV-370, 2010 WL 1026968, at * (E.D. Tex. Feb. 16, 2010) ("The alleged oral modification here relates to the original loan agreement, which must be in writing because the parties modification here relates to the original loan agreement, which must be in writing because the parties do not dispute it exceeds $50,000."); *Deuley v. Chase Home Finance LLC*, No. H-05-04253, 2006 WL 1155230, at *2 (S.D. Tex. Apr. 25, 2006) ("The oral modification in this case relates to the original loan agreement, which must be in writing because it exceeds $50,000. Thus, the modification is also required to be in writing to comply with the statute of frauds." (citing § 26.02(a)(2)). The promissory estoppel exception to the statute of frauds does not apply because there is no allegation that there was an existing written agreement relating to the delay in foreclosure that Defendants promised to sign. Accordingly, because the oral agreement upon which the promissory estoppel claim relies is invalid, Defendants' motion to dismiss the Caseys' promissory estoppel claim is GRANTED.

**E.    Unreasonable Collection**

The Caseys' sixth cause of action is "unreasonable collection." Dkt. 1-1. They contend that the alleged wrongful foreclosure constitutes an unreasonable collection effort by Defendants. *Id.* Defendants assert that this claim must be dismissed because the Caseys lack standing to assert a claim under the Making Homes Affordable program and that their claim that Defendants failed to follow Texas requirements for acceleration and notice is "too generalized to support a claim for unreasonable debt collection." Dkt. 4. The Caseys, however, do not attempt to assert a claim under the Making Homes Affordable program as they do not assert that Defendants failed to follow that program's requirements, and they do not even discuss the Texas requirements for acceleration and notice. *See* Dkt. 1-1 ¶ 21.F, Count 6. "The tort of unreasonable debt collection is an intentional tort,

'but the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case.'" *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 747 F. Supp. 2d 794, 818 (S.D. Tex. 2010) (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008)). Here, viewing the facts in the light most favorable to the Caseys, the Defendants advised the Caseys not to make full payments as making full payments would disqualify them from the modification program, verbally assured them that foreclosure would not occur during the modification process, and then foreclosed on the home because the Caseys failed to make their full payments. These allegations plausibly state a claim that the debt collection was unreasonable. Thus, Defendants' motion to dismiss the Caseys' claim for unreasonable debt collection is DENIED.

## F.     Breach of Duty of Fair Dealing

The Caseys contend that Defendants, who they claim transacted thousands of modifications of home loans, owed them a duty of good faith and fair dealing that Defendants breached through their misrepresentations and failure to provide a fair and unbiased modification process. Dkt. 1-1. Defendants assert that Texas does not recognize an implied duty of good faith and fair dealing in contract. Dkt. 4. There is, generally, no implied covenant of good faith and fair dealing in Texas. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983). In Texas, "parties who have a dispute over a contract [may] present their case to an impartial tribunal for a determination of the agreement as made by the parties and embodied in the contract itself." *Id.* The Texas Supreme Court, in declining to adopt the implied covenant, reasoned that adopting such a "laudatory sounding theory" "would place a party under the onerous threat of treble damages should he seek to compel his adversary to perform according to the contract terms as agreed upon by the parties," and would allow each case to "be decided upon [by] what might seem 'fair and in good faith,' by each fact finder." *Id.*

There are, however, certain exceptions to the general Texas rule that parties to a contract do not have an implied duty of good faith and fair dealing.  If the parties have certain "special relationships," such as the relationships between an insured and insurer, principal and agent, joint venturers, or partners, then a duty of good faith and fair dealing may arise.  *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987).  "To impose a tort duty upon parties to a contract, the court must first find that a special relationship exists between them. . . . When special confidence is placed in one who thereby obtains a resulting superiority of position and influence, a fiduciary or confidential relationship may result." *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citations omitted).  This "special relationship may arise from the element of trust necessary to accomplish the goals of the contract, or because of an imbalance of bargaining power." *Id.*

Texas courts generally refuse to apply the duty to the lender-borrower relationship. *See, e.g.*, *FDIC v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith."); *Farah*, 927 S.W.2d at 675 ("The relationship between borrower and lender is usually neither a fiduciary relationship nor a special relationship."); *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 116 (Tex. App.—Dallas 1991, no writ ) ("We agree that the *English* rule [that there is no implied covenant of good faith and fair dealing] continues to apply to commercial contractual relationships, including the lender-borrower relationship."); *Georgetown Assocs., Ltd. v. Home Fed. Sav. & Loan Ass'n*, 795 S.W.2d 252, 255 (Tex. App.—Hous. [14th Dist.] 1990, writ dism'd w.o.j.) ("[T]here is no free-floating obligation of 'good faith.'").  "[W]hen a special relationship between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Farah*, 927 S.W.2d at 675 (citing *Greater S.W. Office Park, Ltd.*

14

*v. Tex. Commerce Nat'l Bank*, 786 S.W.2d 386, 391 (Tex. App.—Houston [1st Dist.] 1990, writ denied)).

The Caseys allege that "Defendants transacted thousands of modifications of home loans, and were more knowledgeable of the process, the options and dangers than Plaintiffs." Dkt. 1-1 ¶ 21.F, Count 7. Viewing these allegations in the light most favorable to the Caseys, it is plausible that this gave rise to a special relationship due to an imbalance in bargaining power. Thus, the Caseys have adequately stated a claim for breach of the implied duty of good faith and fair dealing. Defendants' motion to dismiss this claim is DENIED.

**G.   Accounting and Inadequate Consideration**

The Caseys assert that Defendants did not provide an accounting of funds received prior to foreclosure or provide an accounting of funds received at the foreclosure sale. Dkt. 1-1. The Caseys thus seek an order compelling Defendants to provide a full accounting. *Id.* They also assert that they believe the foreclosure was not conducted in a fair or statutorily authorized manner and that Defendants intentionally sold their home for less than a normal competitive value, and they seek an order setting the foreclosure aside. *Id.* Defendants move for dismissal of the Caseys' requests for accountings, stating simply that "Plaintiffs have not pleaded any theory to support their request for an accounting." Dkt. 4. at 10. The court agrees that the Caseys have not stated any theory under which they are entitled to an accounting. Defendants' motion to dismiss on this claim is therefore GRANTED.

**H.   Motion to Amend**

The Caseys first request that the court deny Defendants' motion to dismiss and, alternatively, seek leave to amend their petition so as to address any items that the court finds need greater specificity. Dkt. 8. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a court should

15

freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). However, while there is a "bias" in favor of amendment, "it is not automatic." *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996). Courts must consider the following factors when determining whether to grant a request for leave to amend: "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 268 (5th Cir. 2004). While the court does not believe there is any dilatory motive or bad faith on the part of the Caseys with regard to their motion to amend, it is their first request to amend, and no undue prejudice would result, the court finds that amending the fraud or promissory estoppel claims would be futile. The Caseys' motion to amend is therefore GRANTED IN PART AND DENIED IN PART. The Caseys are hereby GRANTED leave to amend their petition, however, they may not restate their fraud and promissory estoppel claims, which are DISMISSED WITH PREJUDICE.

### IV. Conclusion

Defendants' motion to dismiss (Dkt. 4) is GRANTED IN PART AND DENIED IN PART. It is DENIED with respect to the Caseys' claims for unreasonable debt collection and breach of the duty of fair dealing. It is GRANTED with respect to the Caseys' claims for fraud, wrongful foreclosure, slander of title, promissory estoppel, and requests for accountings. The claims for fraud and promissory estoppel are hereby DISMISSED WITH PREJUDICE. The claims for wrongful

foreclosure and slander of title and the requests for accountings are DISMISSED WITHOUT PREJUDICE.

The Caseys' motion to amend (Dkt. 8) is GRANTED IN PART AND DENIED IN PART. It is DENIED with respect to the fraud and promissory estoppel claims. It is otherwise GRANTED. If the Caseys wish to reassert the dismissed claims, they must do so by filing an amended complaint within twenty (20) days of this order.

It is so ORDERED.

Signed at Houston, Texas on April 23, 2012.

Gray H. Miller
United States District Judge